I'm sorry for the fact that we had a misunderstanding regarding the status of the courtroom, but we will proceed. Let me just ask you a question about that. My understanding is that your blue brief was not filed under seal, is that right? All of the pleadings in the case have been filed under seal. Your blue brief doesn't say filed under seal. Could we, my associate, Ms. Roberts, excuse me, spoke to the clerk of this court in San Francisco and was advised that all matters in the court once it was first designated as under seal were treated under seal and that there was nothing further to be done. Anyway, why don't you go ahead. Thank you very much, Your Honor. Your Honor, I will be reserving five minutes to come back again for rebuttal. As you're aware, I represent former Governor John Kitzhopper, who has filed a motion to his due process, I'm sorry, his rights under the Fourth Amendment to the United States Constitution. Is it strictly the Fourth Amendment or are you relying on Rule 17 as well? We are also relying on Rule 17, Your Honor, although Judge Hernandez in the lower court construed the matter solely to be a Fourth Amendment challenge. Well, that's why I was asking, in the course of your argument, could you address why our enterprises doesn't set the floor, if you will, for the Fourth Amendment, where the Fourth Amendment, where you need to resort to the Fourth Amendment? And would you also address how Horne, our decision in Horne, plays into all of this? I'd be delighted to. Thank you. I don't want to interrupt your argument, I just wanted to give you a clue as to what the line of thinking or inquiry that I'm interested in, so I wanted to make sure you addressed it. I'd be delighted to address it right now, Your Honor. The Enterprise case, I believe, is completely inapplicable to the circumstances of this case. In Enterprise, what happened is the court, the U.S. Supreme Court, was asked to review whether or not the Fourth Circuit had properly applied the U.S. versus Nixon standard to the motion to quash. Which would be an admissibility at trial. I'm sorry, which is an admissibility at trial question. And what the U.S. Supreme Court was very careful to do, in its opinion, is it said, basically, under the circumstances of that case, where relevance was being challenged, the burden would be on the party moving to quash to prove that no relevant evidence would be obtained pursuant to that subpoena. But it also clearly enunciated, before reaching that holding, the Calendris standard, and said that that was not applicable. It was not an issue in that case. And what was significant in the Enterprise case is the U.S. Supreme Court also referenced the early trial record where the trial judge had said, this is a very plain, ordinary subpoena. What we're talking about right here is a regular subpoena for business records. So in that circumstance, where the proponent of the motion to quash is saying, this is not relevant, the deference given to the grand jury process is high. And then the requirement is that you prove no, that there is no possibility for relevance. Yes. The government had a list of the kinds of information it was seeking, and it apparently took the position that there was a limitation to the subpoena, basically, in that list. Yes. And the district court rejected that position. Correct. That's where it's peculiar. But suppose that it had been limited to that list, would you still be arguing? Yes. And why don't we just construe it that way? I mean, I think so. It can't be. I don't mean to be disrespectful, but it can't be construed. Well, they can rewrite it so it does. They could rewrite. So why are we spinning wheels? I mean, if I ask them and they say that's all we actually want, and I say, okay, go and write that subpoena, we'll just be back here tomorrow. So what's the answer to the question? Well, I have three simple answers to that question. Judge Hernandez was correct. There is nothing in the attachment that is a limitation. It in and of itself says including. But I suppose, I will ask her, but let's suppose she says, we will go and write a subpoena that only asks for that list of things. Then what? Well, first of all, they can't do that because under the terms in one section of that, and we'd be back here again, is they want all emails to and from former Governor Kitzhaber. Counsel, I think the question is, if you look at the subpoena on ER- Yes. 61 and 62, there are 13 categories. Correct. Major categories of subject matter. Okay. And then you get to ER-62, and it says, for the above listed time period, any and all email communications from or to or regarding the following individuals. Correct. And I think what Judge Berzon, I assume, was asking, what if they started out with respect to the above enumerated categories, and then they say all emails to or from regarding, from those individuals, regarding the 13. What's your objection to that? So the limitation, let me just make sure I'm hearing you correctly. In other words, there's a substantive list there. If this was limited to the substantive list. If it was limited, Your Honor, to the substantive list, and they wrote a properly narrow subpoena that also excluded attorney-client communications- He's already, excuse me, already excluded communications with the governor's personal attorney, correct? Actually, he has not. What he has said is that all the records will be given to the government, all of them, and That's a screening process, but he said you get the privilege honored with respect to those kinds of emails. We get the privilege, but it's one thing to get a privilege, it's another thing to have to turn them over in the first place. That may be, okay. But in terms of addressing the scope of the subpoena, you at a minimum have his ruling that he will honor the attorney-client privilege between the governor and his private counsel. How it gets effectuated may be a separate issue, correct? But in response to the several questions that you posed regarding the scope of a properly drawn subpoena, and would it be properly drawn if it was limited to the enumerated categories? Well, I was trying to stick to the first question, the over breadth and reasonableness question. I understand the privilege issue is a separate issue. But I gather that part of the problem here, I don't quite know how it intersects, is the problem of the emails that were archived, let's assume for the present, erroneously. And I gather your position would be with regard to them that whatever they're about, that they're not proper. Is that, I mean, but some of them apparently, even though they're on a private email address, are governmental interchanges. Okay. The sweep of this current subpoena is so broad, it gathers into its ambit the privately, former Governor Kitzhaber's private subpoenas, I mean private emails. The privacy interest that he asserts to that is the Fourth Amendment privacy interest. Which is not applicable, is it, to any governmental interchange that would have been subject to the Oregon Public Records Act, is it? Well, the email, private emails itself, as a category, it is applicable to. Whether or not some of the emails in that particular category are, in fact, public records, those public records would, in fact, be turned over regardless of a subpoena. But the subpoena does not give them the right to rifle through a private email category of all of his hundredth meridian emails to look for the couple of documents or the small segment of documents that are, in fact, public records. I don't worry too much about the clock. I'll give you a little more time. I'm sorry. I don't worry too much about the clock. I'll give you a little more time. Thanks. I would like to get to the counsel question. But first, you made a motion for a remand, and I didn't really quite understand. I understand why you think it's important, but I don't understand why you think it's important now. Okay. The court, in its opinion, said that, first of all, what was being asked was kind of pulling together all of the responsive information and turning it over to the government. And the court said that was not a search, and it was not an illegal search. But the court went on to state that if DAS was, in fact, required to go through these private emails, the court would not find that a Fourth Amendment violation either. And the reason why these supplemental documents are important is they establish three things. They establish that there is no controversy that these were, in fact, never intended to be archived by the state. Number two, that they are his personal emails. And number three, that the state of Oregon is, in fact, not reviewing them. And that information, I believe, is very important to the court's finding. Not reviewing them. I'm sorry. What do you mean by not reviewing them? Right now, the state of Oregon is simply holding the 100th Meridian account. It is not going through those emails. And for the purpose of producing them for the subpoena, is that what you mean? They're not going to them for any purpose. Right. They're not going through. We attach to you the Oracle pleadings that the state. In general, what's happened, by the way, the state of Oregon has, I mean, everything's on hold because of the motion to quash and there has been no production. Is that right? There's been absolutely no production. And has the state ever taken any position on this? The state, the Office of the Governor, or the Executive, or any entity of Oregon? The only official position that the state has taken on these documents is the Oracle litigation pleadings that we've provided to you. Where they have said that it was inadvertent that we have them. The Governor, former Governor, asserts a privilege. And we're not going to go through them. And, Your Honor, if you want us to go through them, you're going to have to resolve this. They didn't take that position. I assume it's too late for them to do that. Is that right? I don't think the record shows this, but we filed a motion to quash. Everyone knew we filed a motion to quash. And I believe that because it was in the Oregonian, it was public knowledge, the state has waited. I cannot and I am not privy to what arrangements the state's worked out regarding other documents. But I'd like to go back to some of the questions that you posed at the beginning. And that is, why is it not governed by Enterprise? And then would I address Horn? This is Horn. And Horn was decided after Enterprise. And it doesn't even refer to Enterprise. Because this circuit noted, by this kind of startling absence of any referral to Enterprise, that Enterprise does not govern this situation. It didn't cite the Fourth Amendment, did it? The issue, the reason why Horn is not a Fourth Amendment case is that the parties did not raise the Fourth Amendment. Decided it under? 17th C. Rule 17. Correct. But it, interestingly enough, used a kind of Fourth Amendment analysis. By looking at the sweep of the subpoena, the failure to use particular references to categories of information that were in the government's control, and the failure to eliminate privileged material. So you would not read Horn as a Rule 17 implementation case? In other words, you take Enterprise for the Supreme Court, and then Horn puts a gloss on it that says the government has an obligation not to define relevancy in effect by any and all. Right. But it has to make it narrow, which I think feeds into what Judge Brezan was asking, whether this subpoena could be narrowed in the way he suggested. The subpoena right now, as it's written, could, of course, if the government was given leave to amend it, could be amended. But simply calling the attachment the amendment would not satisfy the striking overbreadth aspect of this particular subpoena. I'd like to point your attention, although it's a lower court opinion in a different district, to the Southern District of New York opinion that is the November 15th or November 14th opinion. And the reason why I want you to look at this opinion is it's strikingly on all fours with the situation that is presented in this particular case. The government served the subpoena that called for all devices, all floppy disks, everything, without any limitation, just as was done here, and justified this breathless, sweeping subpoena by saying that it was a government obstruction case. Excuse me, what's the name of that case? I'll give it to you. Is that part of the 20HA letter or what? The name of the case is In Re Grand Jury Subpoena Ducas Tecum, dated November 15th, 1993. 1993, it's after Enterprise. And so the government came in to defend its subpoena and said, we are going to use search terms. And the search, give us everything, we'll use search terms, we'll limit the scope of what we'll review. And the court quashed the subpoena. And the court basically said, based on the government's own admissions, that it could tailor search terms that would eliminate what's completely irrelevant from what is relevant. The overbreath, basically, of this subpoena is established right there. Can we get briefly to the counsel questions? And here's my main question about the counsel questions. The, I'm not sure, well, it's striking that in all the other cases that address the general question of the privilege for government lawyers, the objection was being made by the office of the official or by the government. Isn't that critical? And isn't the fact that that is not true here sort of the end of the story? I think on our side it's the end of the story. The end of the story because the, no one has ever suggested that the individual, the individual and the attorney have a privilege. It's the office or the official entity and the attorney that have a privilege. And since the office isn't claiming the privilege, why don't you just lose on that point? Because former Governor Kitzhoffer communicated with Ms. Reeves regarding ethics advice that only pertained to. I understand that, but why isn't it still a problem that the, that he is now in this individual capacity, he has no official position? And the, I mean, I was sort of surprised. It seems to me a little unusual, again, that the state is here asserting the privilege because you'd think that for broader and other reasons they would want to. And that's what happened in other cases. But they didn't and haven't. And I, you know, there's still this down the line problem. Maybe they still will try, but they haven't. And the privilege doesn't run to him as an individual, does it? I don't think there's anything that says that it doesn't. I think you would look at the factors that this court has enunciated in its cases defining attorney-client privilege and weigh whether those factors are there. Number one, did former Governor Kitzhoffer seek legal advice? Did he seek legal advice from a lawyer? Was it advice that he could rely on? Was it him? Well, suppose all of that is true, but he would still be, it's like a corporation. The lawyer represents the corporation, not the individual. The government lawyer represents the office of the governor, not the governor. Not the person who happens to be filling the office at the time. So how could that person not be claiming the privilege? Is this court's even recognized in its benefit? Is there any case like that? There's no case like this, but if you want to look at the corporate. The Second Circuit case is exactly like this. I'm sorry, what? The Second Circuit case is exactly like this. The only difference there, as Judge Berzon has been alluding to, is that the successor to the governor on behalf of the office waived the privilege. So that's the only difference that might exist. Actually, the Second, I didn't mean to interrupt you. The Second Circuit actually upheld the privilege. I just said, that's your, you were just, I thought you were saying, I don't have a case that's anywhere close to this. You have a case that's directly on point with that one tiny little distinction that's in your favor. You just have three other circuits that have gone exactly the other way. Well, the reason why, and I wasn't relying on that case, which I think is a wonderful case, is in that case it was upheld as an official privilege, and it was upheld that it could be asserted in a criminal investigation. Because we've never asserted official privilege, we did not assert that that case governed this particular matter. Well, I think the case was just like this one. It's identical.  It was this attorney-client privilege that the governor, the former governor, was asserting saying that, well, the advice I sought from the government lawyer would have only affected me in my personal capacity, and that's why I should get the privilege. And the court said, yeah, we agree with that. It's just that other circuits have disagreed. And I think we're. I thought that in that case the office of the governor was. Was what? That the office of the official was taking that position, not just the official. Both took the position. But what is outstanding about that case, and a reason by analogy that it should apply here, is the court reasoned on two bases. One, they looked at the U.S. Supreme Court's proposed rules on attorney-client privilege and incorporated in the U.S. Supreme Court rule, albeit not adopted by Congress, would have captured the official as an individual getting that advice and incorporated it into the attorney-client privilege. Second, the court, unlike the other circuits, that found that the public had a right to know was more important than the privilege. It doesn't matter exactly what he was asking. Suppose he. The ethics issue. An ethics inquiry seems to me to be at least arguably an official inquiry. I'm sorry. I didn't. I said an ethics inquiry seems to me to be at least arguably an official inquiry. But suppose he had said specifically, you know, if I do this, can I go to jail? Would that be privilege? On your understanding? Under my understanding, the ethics advice is exactly like your question, can I go to jail? And yes, it is a privilege. It goes to him. He is the only person who suffers consequences pursuant to an ethics evaluation. Under the pronouncements by the state attorney general, all information provided to the ethics commission is personal, not public. The office of the governor cannot be held in violation of any ethics rules. And so it's clear that the advice that she's giving runs to him. And it's exactly like your hypothetical. Thank you. I'll come back for my five minutes. Thanks, Your Honor. We'll give you six or seven extra minutes as well if you want them. If you don't want them, you don't need to take them. Thank you, Your Honor. May it please the court, Kelly Zusman appearing on behalf of the United States. At the outset, I think it's important to note that this was not a subpoena that was issued to the former governor for his personal e-mails. It was a subpoena that was delivered to the state archivist seeking public records. Now, this particular subpoena, like many subpoenas that we issue to third party, or I should say non-party custodians, included a temporal request. You want all information relative to these dates. So the list that was included with the subpoena itself was to give notice about the nature of the investigation and no more. Judge Hernandez properly considered that and considered our enterprises, the role of the grand jury in seeking material and upholding this particular subpoena. Now, the privacy concerns that have been asserted here, again, it's by someone who is not the recipient of the subpoena. Ingri Horn is completely off point. That was a subpoena that was directed to a criminal defense attorney. There were some obvious concerns about overbreadth because most of the items sought were covered by an attorney-client privilege. We simply don't have that here. And our issue is really more tailored to, there is no reasonable expectation of privacy in material that has been stored with the state archives. Yes, can I ask this? I was searching to try to find an analogous body of case law, because this is kind of an unusual situation. And the body of case law I thought was most relevant, albeit in a different context, are the cases under the Stored Communications Act. They're kind of similar because you almost think of the, whatever the state agency is named is like a glove type entity. It shouldn't have those emails, but it does. And the way most courts, not all, but most courts have approached it, is that they've allowed the government to serve a subpoena like the one you have, that says basically give us, the government, everything, but here are the specified categories of information that we intend to seize. Because, as you know, the SCA requires you to actually get a warrant. And I guess it seemed to me the same kind of approach should perhaps be adopted here, and I wondered what your position was on that. Where we would use that list that Judge Fisher was alluding to as the more specific categories that you, as the government, would be permitted to sort of extract out from the cache of emails, but the rest would have to be returned or destroyed or something else. Sure, and the Stored Communication Act, I think, is a helpful counterpart to sort of see why that's so different. Which is Congress, in enacting the Stored Communications Act, recognized that the Fourth Amendment didn't cover this particular subject. That there was a gap, that people do, Congress recognized, an expectation of privacy in emails, that because of the third party doctrine might be considered waived, because we store this material with Google or AOL. So they passed the SCA specifically to govern those ISPs. So if we were here, under the Stored Communications Act, if the SCA applied, for example, to the state archives, then we might well be looking at complying with the SCA and its notice provisions. But the state archivist is not an ISP. No, no, I got you, and I'm not saying that it is. But, and I think I differ with you on one point, which is that the Fourth Amendment does govern, even in the Google context, the contents of the emails, I think. I don't think any court has said no on that. It's certainly the address, the information that the ISP has to use to decide who to route it to, that's covered by the third party doctrine. But I don't think anybody thinks the contents of the emails are. So I guess what I'm coming, just let me bring you back. I know that that act doesn't apply here, but I'm saying, why wouldn't we sort of import the mode of analysis that many district courts have in that context into this context here by saying, sure, government, you can issue the subpoena, saying to the state agency, turn over all of the emails to us, but you are going to have to specify that categories of emails, and maybe you have, that you actually want and believe are relevant to the investigation, and we will let you sort of go through and do, run whatever searches in that cache of emails you need to, to extract out the relevant stuff, but the rest of it, you have to return or destroy. You're not just going to be able to keep all of that information indefinitely. Why wouldn't we impose that sort of rule in this context, given, granted that it's not covered by the SCA itself. Sure. I don't think you should import those restrictions here, because this grand jury subpoena was issued to the state of Oregon and the archivist, and the state of, neither the state of Oregon nor the archivist has posed any objection whatsoever. Well, I was trying to figure that out. I mean, do we know, for example, given the position they've taken in the other case, that they're actually going to produce the material from the private email account, or are they going to take the position that they're not going to produce it? We don't actually, I understand they haven't objected. We don't, do we know what they're actually going to do? If I, and I'm trying to make sure I answer your question. As an enforcement, as an enforcement matter. We have nothing in this record to suggest that the state of Oregon has any objection to our grand jury subpoena. So, my assumption is they stand ready and prepared to respond to the subpoena. They're just waiting on a rule. I mean, one of the problems here, of course, is that in one sense, although I don't understand their position on the attorney-client issue, their interest and Kate Sabre's interest are at variance because they want to do it as easily as possible. It's much easier for them to just hand everything over. And that may be why the judge, I mean, it was a little odd that the judge, Judge Hernandez, didn't take your limitation. And the only reason I can think of is that he thought it wasn't doable in terms of what the state was going to do. Now, you took the position, as I understand it, that these, this list was actually a limitation on the request. Is that right? Not exactly. We read the subpoena just like Judge Hernandez did. But in terms of the, in response to the objection that this was going to permit general rummaging, we pointed out that it was the attachments to the subpoena that demonstrated to the court the way in which our search would be focused. That's what we're looking for, is the material on those attachments. Did you go back and answer the question I put to you a couple minutes ago? You were going to say, no, you should not import the motive analysis that I described from the SEA context into this context. And you didn't answer, I didn't get to hear why you think we should not do that. And, yes, I don't believe we should import those standards in this case because the recipient of the grand jury subpoena has raised no objection to its breadth. Well, but Google doesn't, I mean, they get a thousand of these things and they don't necessarily object. I mean, as long as a court is going to order them to produce, I don't see any difference there. What else do you have besides that? What we have is a limited body of case law that governs individuals who are seeking to intervene with grand jury subpoenas. Yeah, because they're directly affected. Correct. And their emails. So we know, for example, and we have agreed that even though these emails, assuming inadvertently, provided to the state archivist, we've never taken the position that that inadvertent disclosure waives attorney-client privilege relative to private counsel. What about privacy interests generally? And the concern there is that if it were true that only private emails existed on the private email address, there might be something. But here, we have information developed from our investigation that was presented to Judge Hernandez that there was a tremendous amount of mingling. So to say that, oh, anything associated with this private email address should be excluded. Those are all filter problems, right? You could filter, I mean, then there's the question of how do you do the filter? Who does it? But you still could have limited the request to the governmental communications on the private email. You could have limited the request to the list of subject matter with regard to all the other emails. How we then filter it out is a separate issue. And the proposal that Judge Watford was making was sort of another version of that. But you're essentially saying there shouldn't be any filter. It's just give it to the government, and the government can do what it wants with it. All of it. With the exception of where we. Of private email, private attorney communications. Correct. And that's because under our enterprises, we can, and this is not unusual. I mean, we will oftentimes issue grand jury subpoenas, for example, to banks. Asking for three or four years' worth of records. What we only really want is a small subset of that. Whatever you issue to a bank is going to be nothing like this. Right? This is everything that happened in the governor, in the state government essentially, that the governor was involved in or was about the governor for, what, how many years? Four years? Four years. But what's the process in a bank subpoena? I know I'm familiar with the fact that the banks don't care. They're happy to cooperate, but they don't want to get crosswise with their depositor. Okay. So if something comes to a bank, what's the process by which the depositor gets to participate in which in narrowing down the scope of what the bank will produce? And typically they don't. And that's absent some sort of a privilege. Okay. So you're saying they don't because they made a conscious decision to say, oh, well, too bad. So those don't help us much. That is what you're saying. I think the issue here that's difficult is if you can see that at least his 100th meridian wound up in the possession of the custodian that he didn't intend to have it, and you're saying, well, that custodian inadvertently got it, and they're not objecting. Well, why would they? So the question is, does he have standing to protect his attorney-client and other privacy interests? And if so, how do you accomplish that or accommodate that? You say you will accommodate it for attorney-client. Correct. But not beyond. Correct. And that's because both the Supreme Court and this Court have recognized that it's personal is not a valid objection to a grand jury subpoena. And unlike other fora, the grand jury operates in secret. So it's not like this is not a request from the Oregonian for his private e-mails. This is a grand jury proceeding, and that by its nature is different. We're asking for these materials to be reviewed in secret as part of the grand jury's process. And you do the review. And we do the review. That's correct. So it's your ultimate legal position that, maybe I'll give you a choice of A, B, or C, that he has no standing to object to any of it except first private attorney privileges. I mean, yeah, privilege. Or that he has standing to object, but he loses because you have the authority to have everything because it's a grand jury proceeding, and any dispute has to be later down the line. Or that you're, by giving the third possibility as to what you said is because you have a list of subject matter that the district judge could trust you, and we can trust you to limit what you actually look at to attempts to find things for that subject matter. He has standing to object, certainly relative to his attorney client. I think judge. Let's leave that out. How about the rest of it? Okay. Judge Hernandez recognized that his standing to object may well be broader. I want to know what your position is. Why are you asking us to decide? I'm asking you to affirm Judge Hernandez. I think Judge Hernandez affirmed it on the ground. Because you have standing to object to something beyond the attorney client privilege. That's what you're being asked. So what's the answer, yes or no? Yes. Okay. And so you're saying you just want us to reject the objection on the merits, right? There's no standing issue. Is that your position? And I'm sorry, what was the last part? You don't have a standing problem with what he's trying to do here. You just think on the merits. When he tries to raise some protection beyond the attorney client privilege, there just is none. That's your position, right? And if I may, let me make a run at this. Our position is that the only clearly established standing right that he has is his attorney client privilege. I'm not aware of a case that recognizes a general right of privacy to a grand jury subpoena. Now, to the extent that Judge Hernandez recognized that it is theoretically possible that someone might have standing based upon these external privacy interests, it doesn't work here because these e-mails have all been mingled together. Under our enterprises, the grand jury subpoena that we issued is reasonably likely to bring out the information relevant to the grand jury's investigation.  Okay, and so as I understood Judge Hernandez, he had two remedies to the governor in that process. One, that there was a filtering process that would winnow out things that were clearly in the government's position. I don't know whether it was the government or Oregon's judgment that were not related to anything that the grand jury would be interested in. And second, if the grand jury indicted or it was used at trial, at a trial that might ensue, then he could move to a quash or exclude at that point. So those were his two remedies. I understand what they want is what corporate defendants who get a subpoena do, which is they are subpoenaed for documents and then their attorneys go through internally and they screen out and then provide a privilege log or whatever. So you obviously prefer not adopting that kind of a process. Correct, it's not legally required. Again, if we had served the subpoena on Ms. Hoffman's office, then certainly she would be the one doing the review. But we served our subpoena on a third party seeking public records under state records law. Well, are his private communications public records? When he turns them over to the state. Even if it was inadvertent. In other words, they weren't intended to be. And the problem there is that I guess we look at the definition of a public record, which Oregon covers under Chapter 192 of the Oregon Statutes. And so it would have to relate to public business as I understand it. But you're asking, but you are not accepting any filter to take out the ones that don't relate to public records. That's correct. So it just seems you're saying many things at once and it's confusing to me. Your ultimate position is whether or not it relates to public business. And whether or not he might ultimately have a Fourth Amendment interest in it. Because this is a grand jury proceeding, you can have everything. Is that essentially your position? Essentially, yes. That to the extent he's got privacy. There's no need to tailor it either with regard to private public or with regard to any subject matter relevance. That's correct. Well, Judge Hernandez made the determination that the subpoena sought relevant documents to the grand jury. Well, of course it did. But it also sought irrelevant documents to the grand jury. Well, but that wasn't the target of the grand jury subpoena. I'm sorry, what? That wasn't the intent of the grand jury subpoena. But what you're going to collect is going to be both relevant and irrelevant both public and private. Both privileged and not privileged. I understand you're going to separate out the privileged. That you've accepted. But nothing else. You're not accepting that any, as I understand it, that everybody in your office at least and the grand jury can look at all of it if they want to look at all of it. No, I don't think the grand jury would allow anyone in our office to review it. Certainly those people assigned to the case. I don't understand what you just said. Well, you suggested that anyone in our office could review the material? Well, I don't know. Ordinarily when you get material for a subpoena, do you limit who can look at it? Yes. I mean, within our office it will be. Well, you don't have any necessity to. I mean, you just might as a matter of practice. But there's, I don't know, what legal requirement is that about? I think we all attempt to comply with Rule 6. And so, no, I mean, other lawyers in the office not working on the case are not going to be reviewing this material. Okay, but people who are working on the case will verify it. Can I ask, does your position turn in any way on the manner in which the emails were acquired? And the hypothetical I have in mind is just, let's say, through some kind of theft. A third-party individual acquired all of these emails in some media, and you found out about it and served them with a subpoena. Is it the same result? It just doesn't matter that he never authorized them, that this third party to have a possession of the emails? You could just serve a subpoena and say, just give them all to us. We want them all. And because we think somewhere in there there's going to be something relevant to our investigation, and he would, just too bad. You should have been more careful. Well, there have been cases involving hackers who have turned over information to the government. And, again, they're not our agent. They weren't doing it on our behest. Or to the world. I'm sorry? Hackers have turned it over to the world by Snowden, and the government has objected to that. Yeah, and I'm not prepared to talk about Mr. Snowden today, Your Honor. You're representing the government here, as you know, and you do so well. But these really create a lot of important policy implications. That's why we're spending so much time on them. I understand. And, Judge Watford, in answer to your question, though, the fact that we come into possession of material that may have been obtained by other sources doesn't mean that there's a Fourth Amendment violation. So the fact that the State Archivist may have received information that the intervener inadvertently sent to it, I get back to, but the basis for his objection to our subpoena is the Fourth Amendment. And the Supreme Court and this Court have held that simply having a right to privacy isn't a viable objection to a grand jury subpoena. Okay. Then in response to that, did you distinguish Horne? If you did, I missed it. And, yes, Horne was a very different case, where we issued a grand jury subpoena to a criminal defense attorney and seeking a broad swath of documents. And what this Court looked at in reviewing that subpoena was that the bulk of the material that we would be receiving would be subject to an attorney-client privilege. And the concern there was that by doing so, we then shifted the burden to the subpoena recipient to both raise and identify why all of those documents were attorney-client privilege. And that was a very cumbersome process. And so under Rule 17c … But his position is that there is no Fourth Amendment privilege. What if it were issued to him? If the subpoena had been issued to him, and they were asking for all of his personal e-mails, he would have no Fourth Amendment privilege to refuse to give it up? To refuse to provide it to the grand jury, no. And I'm not aware of any case that would support that. Again, you go back to Calandra, which says that simply because this is personal is not a basis for objecting to a grand jury subpoena. Every person called before the grand jury owes his testimony. So simply saying it's personal isn't going to get you there. Okay. I promise you several minutes. You have 6 minutes and 53, 4 seconds. So if you have anything else you want … I'm sorry. Does the Court have any further questions? If no, then I will submit, Your Honor. Okay. We'll give you three minutes. Do you have any questions of me before I begin? I have one question on the attorney-client question. Yes. The Second Circuit case turned in part on what position Connecticut took in its statutes with regard to the attorney-client privilege. And I suppose also, I mean, I suppose, that there would be nothing to stop a state from providing the governor with private counsel because they want to provide him with private counsel. And then it would be his private counsel. Just because they're paying for it wouldn't be the reason. But do we know anything about Oregon law with regard either to how Oregon would treat this problem if there were a subpoena for a state grand jury or for a state trial, and also whether there's any reason to think that Oregon is paying its governmental lawyers for anything other than governmental advice? I believe Oregon does not pay its governmental lawyers for anything other than governmental advice. Sometimes the Attorney General appoints governmental lawyers to represent individuals, but it's theoretically as a government employee that they're being represented. Under state law, I believe firmly that an attorney-client privilege would exist between former Governor Kitzhopper and Ms. Reeves. The difference is, and this is what we've been saying, it's a joint interest. The governor's office has an interest, and so does former Governor Kitzhopper. Neither can individually waive it. The reason why state law would be clear on this is it goes to the reasonable expectation of the client in their attempt to be able to secure legal advice, and whether it's something that the lawyer would know that the client is, in fact, relying upon. Well, in fact, my understanding is the theory as to why you wouldn't have an attorney-client privilege vis-a-vis a government attorney while he was in office seeking conflict of interest advice, for example, is that the proper approach is to hire you for having him hire his own attorney so he could get that in his non-official capacity. I actually, we addressed this in our brief, but I don't think that. It was designed to help you, but maybe. Yes, I don't think that answers the question, because as this court has said, the importance of the attorney-client relationship is that it encourages the public interest by having the free exchange of information. Yeah, but that may be true, counsel, but there's a, when you're in office, particularly as governor, and you're seeking personal legal advice from government attorneys, I don't see why that's the same thing as going to outside counsel and seeking private advice, which I think legitimately would be subject to attorney-client privilege, but I don't think it gets you, as a matter of logic, as a necessary conclusion, that therefore, in order to accomplish communication, that you get an attorney-client privilege. Maybe you get an official, you know, an official privilege like the White House invokes with respect to its decisional process, or the governor may do the same, but they're different policy obligations. I understand your point, but I don't think it's a clear either or. I understand that. I think that if you apply to state law, but, of course, privileges decided under the federal common law in this court, but if you apply the expectation of the parties in Oregon with an Oregon lawyer, an Oregon governor, there is a basis to believe that that attorney-client relationship was created and existed, not to the exclusion of the governor's office. If I. Well, that's vis-a-vis a Oregon employee, a lawyer of the state. I believe, yes, although I have to say it has not come up and there is not a decision on it. It's just taking the doctrines as they apply to the creation of a relationship. I'd like to go back very quickly to the main argument. First of all, this case presents the heartland problem as outlined in the Fourth Amendment, which is that an individual is entitled to a reasonable expectation of privacy, and that means freedom from a government intrusion such as what's occurred in this particular case, which is absolutely limitless, seeking every aspect of his 100th Meridian account without regard to relevance and without regard to any of the privileges that may be contained in it. They just said, we want it all. I thought they conceded that the privileged part of those emails, if there is an attorney-client privilege, they would honor that. They only honored it because we objected. Well, whatever. I mean, you went on that. We went on that. You're talking about this then category of documents which may be, as you say, irrelevant. Correct. Are you arguing at all, and then you're going to have to finish, are you arguing only with regard to the personal email account? In other words, do you have any argument at all, does your general over-breath privacy arguments, et cetera, apply at all to the conceit of the governmental email account? I assume not. No. The over-breath argument only applies to that narrow category called 100th Meridian. If the state wants to argue over-breath, they can do it. And also the Fourth Amendment reasonableness because all of that is subject to the Public Records Act and all of it was conceit of the government business. So you're not talking about that. We're not talking about that. Only talking about the private account. Correct. And what's interesting in the government's argument to you is they seem to cabin off that their subpoena was only seeking public records. And that is absolutely not the case. To the extent that it grabs 100th Meridian, that is not a public record. Well, some of it may be. Some of it is. Some may be. But that doesn't change the nature of the email account. You're not contending that if there were governmental business emails on that account that that would cover them? Well, if they had a carefully tailored subpoena that sought only relevant materials, then they could look at 100th Meridian. But it has to be. Could I say one more last thing? One more last thing. We believe we are the only parties who should review the 100th Meridian account. And that's because unlike cases where you cannot bring a motion to suppress, this is a future illegal search that would happen if the government reviewed 100th Meridian or if the state reviewed it. And if we do it, like in the corporate context that you were analogizing it to, we could respond to a carefully crafted subpoena, and we'd be delighted to turn the materials over. We just — Okay. Thank you very much. Thank you very much. Thank you, counsel, for long but interesting arguments in an important case. You regrant your subpoena. We're going to take a five-minute break. Thank you.
judges: Fisher, Berzon, Watford